THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>MY CHOICE SOFTWARE, LLC, and<br>NATHAN MUMME,<br><br>    Defendants. | CASE NO. C18-0608-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff Microsoft Corporation's first motion to strike or in the alternative dismiss for failure to state a claim (Dkt. No. 98), Plaintiff's second motion to strike or in the alternative dismiss for failure to state a claim (Dkt. No. 107), Defendant My Choice Software, LLC's ("MCS") motion to file a third-party complaint (Dkt. No. 112), Defendant Nathan Mumme's ("Mr. Mumme") motion to dismiss for lack of personal jurisdiction (Dkt. No. 115), and MCS and Mr. Mumme's (collectively "Defendants") motion to strike Plaintiff's praecipe (Dkt. No. 129).

**I. BACKGROUND**

The Court will provide a detailed summary of this action's factual and procedural background to give context to its rulings on the parties' pending motions.

On December 9, 2016, Plaintiff initiated this lawsuit against Defendants in the Central

District of California. (Dkt. No. 1.) Plaintiff alleges that Defendants "advertised, marketed, copied, offered and/or distributed unauthorized, infringing and/or illicit Microsoft software and components after being previously sued by Microsoft for the infringement of Microsoft's copyrights, trademarks and/or service mark and after entering into a permanent injunction." (*Id*. at 7; *see also* Dkt. No. 34.) Plaintiff's initial complaint asserted eight causes of action against Defendants regarding their alleged trademark and copyright infringement of Plaintiff's software. (Dkt. No. 1 at 9–18.)

On April 6, 2017, Plaintiff filed its first amended complaint, which added allegations and claims regarding Plaintiff's Managed Partner Network ("MPN") in which MCS was a participant. (Dkt. No. 20.) Pursuant to the parties' MPN Agreement, Plaintiff made incentive payments to MCS for its sale of qualifying Microsoft software and licenses. (*Id*.; *see also* Dkt. No. 100-1 at 60–93.) In the first amended complaint, Plaintiff alleged that Defendants were selling Microsoft Office 365 subscriptions to customers without the customers' knowledge in order to "increase the amount of the MPN incentive payments they were receiving from Microsoft." (Dkt. No. 20 at 14.) Plaintiff asserted that Defendants' conduct regarding the MPN agreement constituted unlawful, unfair, or fraudulent business practices in violation of California Business & Professions Code § 17200, and resulted in unjust enrichment. (*Id*. at 23–24.)[1]

On May 12, 2017, Defendants moved to dismiss the first amended complaint or in the alternative to compel a more definite statement. (Dkt. No. 27.) On October 10, 2017, the Honorable David O. Carter, United States District Judge, granted in part and denied in part Defendants' motion, and dismissed one of Plaintiff's 11 causes of action without prejudice and with leave to amend. (Dkt. No. 33 at 14.)

On October 30, 2017, Plaintiff timely filed a second amended complaint, which alleged the same causes of action as the first amended complaint. (Dkt. No. 34.) After filing their

---

[1] The first amended complaint asserted 11 causes of action. (*See* Dkt. No. 20.)

answer, Defendants filed counterclaims against Plaintiff. (Dkt. No. 39.)[2] Defendants alleged that Plaintiff wrongfully terminated them from the MPN and withheld incentive payments that were owing under the MPN Agreement. (*See id.*) Defendants additionally asserted that Plaintiff had misrepresented that its approved vendors sold authentic software, which MCS purchased had and re-sold. (*Id.*)

On December 18, 2017, Plaintiff filed a motion to sever Defendants' counterclaims and transfer them to the Western District of Washington. (Dkt. No. 41 at 2.) Plaintiff argued that adjudicating the counterclaims required interpretation of the MPN Agreement, which contained a forum selection clause placing exclusive jurisdiction over such claims in the Western District of Washington. (Dkt. No. 41-1 at 16.) In the alternative, Plaintiff asked the Court to dismiss the counterclaims for failure to state a claim. (Dkt. No. 41 at 2.)

While Plaintiff's motion was pending, Judge Carter issued a scheduling order, which established March 26, 2018 as the deadline for pleading amendments and third-party practice. (Dkt. No. 50 at 2.) On March 26, 2018, Defendants filed a motion for leave to file a third-party complaint against Flex-Tech Solutions, Inc., Southern Technology Solutions, Inc., Teri Reeves, Thomas Reeves, and 10 Doe defendants. (Dkt. No. 62.) Defendants asserted that the proposed third-party defendants sold them the allegedly infringing software and would therefore be liable to indemnify Defendants in the event a judgment was entered against them. (Dkt. No. 62-1 at 8.)[3]

On April 23, 2018, Judge Carter held a hearing on Plaintiff's motion to sever and transfer

---

[2] Defendants asserted the following counterclaims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) intentional misrepresentation, (4) negligent misrepresentation, (5) intentional interference with prospective advantage, (6) tortious interference with prospective advantage, (7) unfair competition in violation of California Business & Professions Code § 17200, and (8) false advertising under both federal and California law. (Dkt. No. 39 at 6–19.)

[3] In addition to indemnification, Defendants asserted claims for (1) tortious interference with contractual relations, (2) intentional interference with prospective economic relations, (3) negligent interference with prospective economic relations, (4) fraudulent misrepresentation, (5) fraudulent concealment, (6) equitable indemnity, and (7) equitable contribution. (Dkt. No. 62-1 at 7–13.)

Defendants' counterclaims. (Dkt. No. 70.) Judge Carter stated that he was "inclined to transfer the entire action" to the Western District of Washington and directed Plaintiff to file a request to transfer the entire action. (*Id*.) On April 25, 2018, Judge Carter issued an order transferring the case to the Western District of Washington. (Dkt. No. 72.)

Following transfer, the case was assigned to the Honorable Richard A. Jones, United States District Judge. (Dkt. No. 76.) The parties then filed a stipulation to re-note Plaintiff's motion to dismiss Defendants' counterclaims and Defendants' motion for leave to file a third-party complaint, which Judge Jones adopted on May 3, 2018. (*See* Dkt. No. 82.) On June 6, 2018, Mr. Mumme voluntarily dismissed his counterclaims against Plaintiff pursuant to Federal Rule of Civil Procedure 41(a)(1). (Dkt. No. 94.)

On September 12, 2018, Judge Jones denied Defendants' motion for leave to file a third-party complaint. (Dkt. No. 95.) Judge Jones ruled that Defendants' proposed third-party complaint would "complicate an already dense record, further prolong trial and pretrial proceedings, and introduce extraneous claims and potential cross claims." (*Id*. at 3.) Judge Jones concluded that there was "no reason to inject further delays by adding a host of out-of-state defendants and separate claims that are not germane to the present dispute." (*Id*. at 4.)

On September 26, 2018, Judge Jones granted Plaintiff's motion to dismiss MCS's counterclaims. (Dkt. No. 96.) Judge Jones ruled that the counterclaims failed to state a claim upon which relief could be granted. (*Id*. at 5.) Although expressing skepticism that MCS could "overcome certain factual and legal deficiencies," Judge Jones granted MCS "one opportunity to amend" its counterclaims to cure the identified deficiencies. (*Id*. at 20.)

On October 12, 2018, MCS timely filed its first amended counterclaim. (Dkt. No. 97.) The first amended counterclaim asserted several new theories of liability against Plaintiff. (*See generally id.*) In addition to its initial claims related to the MPN Agreement, MCS asserted that it had entered into a "Microsoft Cloud Solution Reseller Agreement" (the "Reseller Agreement") with Synnex Corporation ("Synnex"), who is Microsoft's "preferred and only cost-effective

distributor for Office 365 to small businesses like [My Choice]." (*Id*. at 3–5.) MCS asserted that the Reseller Agreement enabled it "to order Office 365 licenses from Synnex," and that it entered into the Reseller Agreement because its sales of Office 365 licenses qualified "for incentive payments from Microsoft through the MPN." (*Id*. at 5.) MCS further stated that "[t]he wrongful distribution practices allegations in [Plaintiff's] Second Amended Complaint are based on MCS's sales of Office 365 licenses made pursuant to and in accordance with the [Reseller Agreement]." (*Id*.)

Pursuant to the Reseller Agreement, MCS alleges that it "registered approximately 35,000 Office 365 license seats with Synnex." (*Id*. at 6.) MCS further alleges that Synnex charged it for all registered Office 365 licenses, regardless of whether they were activated or cancelled prior to expiration of a 30-day trial period. (*Id*.) As a result, MCS asserted that Synnex overbilled it for the licenses, in an amount estimated to exceed two million dollars. (*Id*. at 7.) MCS alleged that Synnex was acting as Plaintiff's agent in entering into and performing under the Reseller Agreement. (*See generally id.*) MCS also alleged that Plaintiff terminated the MPN agreement while still owing MCS approximately $140,000 in incentive payments. (*Id*. at 8.) The first amended counterclaim asserted the following causes of action against Plaintiff: (1) breach of the Reseller Agreement and the MPN Agreement, (2) violation of the duty of good faith and fair dealing with regard to the Reseller Agreement and the MPN Agreement, (3) unjust enrichment, (4) conversion, (5) an accounting, and (6) imposition of a constructive trust. (*Id*. at 9–13.)

On October 25, 2018, Plaintiff filed a motion to strike or in the alternative dismiss MCS's amended counterclaim. (Dkt. No. 98.) Plaintiff asserts that the amended counterclaim should be struck because MCS exceeded the leave that Judge Jones granted to amend. (*Id*. at 5.) Alternatively, Plaintiff asserts that MCS's counterclaims fail to state a claim upon which relief can be granted because Plaintiff was not a party to the Reseller Agreement whether as a signatory, or as Synnex's principal. (*Id*. at 6.)

On November 15, 2018, MCS filed a second amended counterclaim that alleges the same causes of action, but includes additional allegations regarding its claim that Synnex was acting as Plaintiff's agent. (*Compare* Dkt. No. 97, *with* Dkt. No. 103.) On November 29, 2018, Plaintiff filed a second motion to strike or in the alternative dismiss MCS's counterclaims. (Dkt. No. 107.) Plaintiff asserts that MCS's second amended counterclaim is both untimely and in violation of Judge Jones' prior order. (*Id*. at 6–7.) Plaintiff again argues that the counterclaims should also be dismissed for failure to state a claim. (*Id*. at 7.)

On January 23, 2019, MCS filed a motion for leave to file a third-party complaint. (Dkt. No. 112.) MCS's proposed third-party complaint seeks to implead Synnex and assert the same causes of action for breach of the Reseller Agreement that it alleges against Plaintiff in its second amended counterclaim. (*Compare* Dkt. No. 103, *with* Dkt. No. 112-1.) Plaintiff objects to MCS's motion to file the third-party complaint. (Dkt. No. 118.)

On January 24, 2019, Mr. Mumme filed a motion to dismiss for lack of personal jurisdiction. (Dkt. No. 115.) Mr. Mumme argues that he is not subject to specific jurisdiction because "he has not purposely directed any of his activities toward Washington, [Plaintiff's] claims do not arise out of [his] forum-related activities, and exercising personal jurisdiction over [him] in Washington would not comport with fair play and substantial justice." (*Id*. at 2.) Mr. Mumme additionally asserts that Plaintiff has not adequately alleged that he is MCS's alter ego for purposes of establishing personal jurisdiction. (*Id*.)

On February 11, 2019, Plaintiff filed a response in opposition to Mr. Mumme's motion to dismiss. (Dkt. No. 118.) On March 8, 2019, Plaintiff filed a praecipe seeking to supplement its opposition with documents it had subsequently obtained through a third-party subpoena. (Dkt. No. 123.) The subpoenaed documents are emails between Mr. Mumme and a Washington-based vendor of Plaintiff's software that purport to show that Mr. Mumme maintains contacts with the forum. (*Id*.) On March 13, 2019, Defendants filed a motion to strike Plaintiff's praecipe, arguing that it was both improperly filed and prejudicial. (Dkt. No. 129.)

On April 15, 2019, prior to Judge Jones ruling on any of the parties' pending motions (Dkt. Nos. 98, 107, 112, 115, 129), the case was reassigned to this Court.

## II. DISCUSSION

### A. Plaintiff's First Motion to Strike or in the Alternative to Dismiss

Plaintiff's first motion to strike or, in the alternative, dismiss MCS's first amended counterclaim (Dkt. No. 98) is DENIED as moot. MCS's second amended counterclaim was properly filed as a matter of course. *See* Fed. R. Civ. P. 15(a); *see also Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015) (holding that Rule 15 "does not mandate that the matter of course amendment under 15(a)(1) be exhausted before an amendment may be made under 15(a)(2), nor . . . that the ability to amend under 15(a)(1) is exhausted or waived once a 15(a)(2) amendment is made"). MCS's first amended counterclaim was filed pursuant to Judge Jones' order granting leave to amend. (Dkt. No. 96.) Prior to MCS's second amended counterclaim, MCS had not amended its counterclaim as a matter of course. After Plaintiff filed its first motion to strike or in the alternative to dismiss, MCS timely and properly filed its second amended counterclaim as a matter of course. Therefore, MCS's second amended counterclaim rendered Plaintiff's first motion to strike or in the alternative to dismiss moot. *See Ramirez*, 806 F.3d at 1008 ("Because the [d]efendants' motion to dismiss targeted the [p]laintiff's First Amended Complaint, which was no longer in effect, we conclude that the motion to dismiss should have been deemed moot before the district court granted it.").

### B. Plaintiff's Second Motion to Strike or in the Alternative to Dismiss

Plaintiff's second motion to strike or in the alternative to dismiss the second amended counterclaim is GRANTED in part and DENIED in part. Plaintiff's motion to strike is DENIED because MCS's second amended counterclaim was properly filed as a matter of course under Rule 15. *See* Fed. R. Civ. P. 15(a); *supra* Part II.A. Plaintiff's motion to dismiss the second amended counterclaim is GRANTED with regard to MCS's counterclaims that are based on the Reseller Agreement and DENIED as to MCS's counterclaims that are based on the MPN

Agreement.

### 1. Reseller Agreement

MCS has not plausibly alleged that Plaintiff was a party to the Reseller Agreement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face").[4] On its face, the Reseller Agreement is clearly a contract between non-party Synnex, a distributor of Microsoft software, and MCS, a Reseller of Microsoft software. (*See* Dkt. No. 109-1 at 5–20) ("Subject to the terms and conditions of this Agreement, SYNNEX hereby appoints [MCS] as a nonexclusive reseller of the Services in the Territory and grants to [MCS] a nontransferable and nonexclusive license during the term of this Agreement to distribute the Services in the Territory.").

Although MCS asserts that Plaintiff is a party to the Reseller Agreement under an agency theory, the second amended counterclaim does not allege facts that allow the Court to draw a reasonable inference that Synnex was acting as Plaintiff's agent, either expressly or ostensibly, in entering into or performing under the Reseller Agreement. *See* Cal. Civ. Code § 2298 ("An agency is either actual or ostensible"); *see also Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007) (describing the requirements for pleading an actual or ostensible agency relationship under California law). The second amended counterclaim contains only conclusory allegations that Plaintiff expressly authorized Synnex to

---

[4] The Court considers the Reseller Agreement (Dkt. No. 109-1 at 5–20) under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (noting that, on a motion to dismiss, district courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."). The second amended counterclaim repeatedly refers to the Reseller Agreement, a copy of which defense counsel provided to Plaintiff at its request. (Dkt. No. 109-1 at 2–3, 5–20.) The Court does not consider the version of the Reseller Agreement Plaintiff obtained independently from Synnex's website (*id.* at 21–50), or take judicial notice of any of the other materials Plaintiff requests. (*See* Dkt. Nos. 107 at 9, 109-1 at 51–58.)

enter into the Reseller Agreement with MCS on Plaintiff's behalf. (*See generally* Dkt. No. 103.) Similarly, MCS does not plausibly allege that Plaintiff held Synnex out as its agent with regard to the Reseller Agreement. (*Id.*)

Because the second amended complaint fails to plausibly allege that Plaintiff was a party to the Reseller Agreement, the Court DISMISSES all of MCS's counterclaims that are predicated on the Reseller Agreement without leave to amend.[5] The Court concludes that further amendment would be futile, as MCS has amended its counterclaims twice and been unable to successfully allege plausible claims regarding the Reseller Agreement. *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

                2.        <u>MPN Agreement</u>

MCS has plausibly alleged that Plaintiff breached the MPN Agreement by failing to pay MCS incentive payments "for sales made for a time period that is almost a year prior to the MPN Agreement's cancellation." (Dkt. No. 103 at 10.) The second amended counterclaim plausibly alleges that a valid contract existed, which required Plaintiff to pay MCS certain incentive payments, and that Plaintiff breached this duty by withholding incentive payments owed to MCS prior to the termination of the MPN Agreement. (*Id.* at 10–13; *see also* Dkt. No. 100-1 at 60–93.) To the extent Plaintiff argues that it properly withheld incentive payments because MCS breached the MPN Agreement, MCS has sufficiently alleged that it did not breach the Agreement. In addition to its breach of contract claim (third cause of action), MCS has plausibly alleged that Plaintiff's withholding of incentive payments constituted a breach of the covenant of good faith and fair dealing (fourth cause of action), unjust enrichment (fifth cause of action), and

---

[5] MCS's causes of action 1, 2, and 7 are DISMISSED in their entirety, as they are based solely on allegations regarding the Reseller Agreement. (*See* Dkt. No. 103 at 10–12, 15.) MCS's causes of action 5, 6, and 8 are also DISMISSED to the extent they are based on allegations regarding the Reseller Agreement. (*See generally* Dkt. No. 103.)

entitles MCS to an accounting (sixth cause of action) and imposition of a constructive trust (eighth cause of action). In accordance with the Court's ruling, Plaintiff shall file its answer to MCS's second amended counterclaim no later than 14 days from the issuance of this order.

### C. MCS's Motion for Leave to File a Third-Party Complaint

MCS's motion for leave to file a third-party complaint (Dkt. No. 112) is DENIED. First, MCS has not shown that Synnex's liability "is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). MCS's proposed third-party claims against Synnex are unrelated to Plaintiff's infringement claims against Defendants, and are, at best, tangentially related to Plaintiff's claims that Defendants were selling Office 365 subscriptions to customers without the customers' knowledge. (*Compare* Dkt. No. 34 at 13–15, *with* Dkt. No. 112-1 at 5–12.)

Second, granting impleader at this stage of the litigation would not effectuate the purpose of Federal Rule of Civil Procedure 14. Allowing MCS to join Synnex to this lawsuit would complicate the issues at trial and further delay what has already been a significantly drawn out case. *See Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000) (citing factors courts typically consider to determine whether impleader should be granted). Moreover, MCS's motion for impleader is not timely—it was filed 10 months after Judge Carter's deadline for third-party practice, and 3 months after Judge Jones denied Defendants' motion to implead a different third-party. (Dkt. Nos. 50, 95.) The Court sees no reason to reverse course at this juncture, and will not entertain any future motions by either party regarding pleading amendments or third-party practice.

### D. Mr. Mumme's Motion to Dismiss for Lack of Personal Jurisdiction

Mr. Mumme's motion to dismiss for lack of personal jurisdiction (Dkt. No. 115) is DENIED because Mr. Mumme waived the defense through his litigation conduct. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) (noting that the personal jurisdiction defense "may be waived as a result of the course of conduct pursued by a party

during litigation"). In opposing Plaintiff's motion to sever and transfer Defendants' counterclaims to the Western District of Washington, Mr. Mumme did not argue that this Court would lack personal jurisdiction. (*See* Dkt. Nos. 42.) Nor did Mr. Mumme raise the issue of personal jurisdiction when Judge Carter announced that he would be transferring the case to this District. (*See* Dkt. Nos. 70–72, 115.)

When the case was transferred, Mr. Mumme stipulated to Judge Jones ruling on Plaintiff's motion to dismiss Defendants' counterclaims and Defendants' motion to file a third-party complaint. (Dkt. No. 82.) Although Mr. Mumme emphasizes that he voluntarily dismissed his counterclaims in June 2018, he did so a month after he stipulated to Judge Jones ruling on his pending impleader motion. Moreover, Mr. Mumme did not raise the personal jurisdiction issue until almost eight months after dismissing his counterclaims. In the meantime, he allowed Judge Jones to rule on his pending motion and he participated in discovery. (*See* Dkt. Nos. 96, 123-1 at 321–46.)

Mr. Mumme's failure to challenge jurisdiction prior to transfer, assent to Judge Jones ruling on his pending motion, participation in discovery, and significant delay in filing his motion to dismiss (and not until after receiving an adverse ruling on his impleader motion), strike the Court as the exact kind of "deliberate, strategic behavior" and "sand-bagging" that the Ninth Circuit has suggested is sufficient to waive the personal jurisdiction defense. *Peterson*, 140 F.3d at 1318.[6]

---

[6] Even if the Court ruled that Mr. Mumme had not waived the personal jurisdiction defense, Plaintiff has also made a *prima facie* showing that Mr. Mumme is subject to specific personal jurisdiction in Washington. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (holding that where a motion to dismiss challenging personal jurisdiction is decided without a hearing, plaintiff need only make a *prima facie* showing of jurisdictional facts). Plaintiff has presented evidence that Mr. Mumme personally and purposefully conducted MCS's business activities with thousands of customers and at least one software vendor in Washington. (*See* Dkt. Nos. 115-1, 123-1); *see Wash. Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Further, Plaintiff's alleged infringement injuries arise out Mr. Mumme's contacts with Washington and caused Plaintiff to be harmed in

### E. Defendants' Motion to Strike Praecipe

Defendants' motion to strike praecipe (Dkt. No. 129) is DENIED. Under this District's Local Civil Rules, a party may seek to add an additional document in support of a previous filing if it files a praecipe that sets forth "why the document was not included with the original filing and reference[s] the original filing by docket number." W.D. Wash. Local Civ. R. 7(m). Plaintiff's praecipe (Dkt. No. 128) complies with this standard. Plaintiff's praecipe supplements its opposition to Mr. Mumme's motion to dismiss with relevant documents that were obtained through a subpoena after Plaintiff filed its opposition. (Dkt. No. 131.) Plaintiff explains why the documents were not included in its opposition and references the original filing by docket number. (*Id.*) Further, the Court finds that its consideration of the praecipe is not prejudicial to Mr. Mumme because the additional documents do not raise new arguments but simply support the arguments Plaintiff made in its opposition to the motion to dismiss. *See Liberty Mut. Fire Ins. Co. v. City of Seattle*, Case No. C15-1039-JCC, Dkt. No. 74 at 1 n.1 (W.D. Wash. 2016) (denying motion to strike a document that was added after briefing had closed because the document did not raise a new argument).

## III. CONCLUSION

For the foregoing reasons:

1. Plaintiff's first motion to strike, or in the alternative, to dismiss MCS's first amended counterclaim (Dkt. No. 98) is DENIED as moot.

2. Plaintiff's second motion to strike, or in the alternative, to dismiss MCS's second amended counterclaim (Dkt. No. 107) is GRANTED in part and DENIED in part. Plaintiff's motion to strike is DENIED. Plaintiff's motion to dismiss is GRANTED as to MCS's counterclaims based on allegations regarding the Reseller Agreement. Those counterclaims are DISMISSED without leave to amend. Plaintiff's motion to dismiss is DENIED as to MCS's

---

Washington. Finally, Mr. Mumme has not demonstrated the Court's exercise of jurisdiction would be unreasonable.

counterclaims based on allegations regarding the MPN Agreement. In accordance with the Court's order, Plaintiff shall file its answer to the second amended counterclaim no later than 14 days from the issuance of this order.

3. MCS's motion for leave to file a third-party complaint (Dkt. No. 112) is DENIED.

4. Mr. Mumme's motion to dismiss for lack of personal jurisdiction (Dkt. No. 115) is DENIED.

5. Defendants' motion to strike Plaintiff's praecipe (Dkt. No. 129) is DENIED.

6. The parties shall appear before the Court on Tuesday, June 4, 2019 at 9:00 a.m. for a status conference to enter a scheduling order pursuant to Federal Rule of Civil Procedure 16.

DATED this 15th day of May 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE